# Illinois Official Reports

## Appellate Court

---

### *Goral v. Kulys*, 2014 IL App (1st) 133236

---

| | |
|---|---|
| Appellate Court Caption | ANNA GORAL, Plaintiff-Appellant, v. JOSEPH KULYS, Defendant-Appellee (John Does 1 through 5, Defendants). |
| District & No. | First District, Fourth Division<br>Docket No. 1-13-3236 |
| Filed | October 30, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff's defamation action against a blogger who questioned plaintiff's qualifications to be a candidate for a position as an alderman based on her alleged violation of Illinois law by having a homestead exemption on two different houses was properly dismissed on the ground that the action was barred by the Illinois Citizen Participation Act, since defendant sustained his burden of proving that plaintiff's lawsuit was intended to stop him from exercising his protected political rights and was meritless and retaliatory, and plaintiff failed to present clear and convincing evidence that defendant's statements were made for any purpose other than obtaining a favorable governmental outcome; therefore, defendant was immune from liability. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-L-5466; the Hon. William E. Gomolinski, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

James J. Macchitelli, of Law Office of James Macchitelli, of Schaumburg, for appellant.

Christopher Koczwara, of Law Office of Christopher Koczwara, PC, of Chicago, for appellee.

Panel

JUSTICE EPSTEIN delivered the judgment of the court, with opinion. Presiding Justice Fitzgerald Smith and Justice Taylor concurred in the judgment and opinion.

**OPINION**

¶ 1    This appeal addresses whether the Illinois Citizen Participation Act (the Act) (735 ILCS 110/1 *et seq.* (West 2010)) bars a defamation suit filed by a former candidate for public office against a blogger who wrote an article questioning whether the candidate was qualified to run for office. Plaintiff Anna Goral, the former candidate, appeals from the trial court's order granting defendant Joseph Kulys's[1] motion to dismiss pursuant to section 2-619(a)(9) of the Code of Civil Procedure. 735 ILCS 5/2-619(a)(9) (West 2010). We affirm the trial court's dismissal, as defendant's speech was protected by the Act and plaintiff's suit was designed to chill defendant's exercise of that protected activity.

¶ 2                          I. BACKGROUND

¶ 3    Plaintiff was a candidate for alderman in the 23rd ward in Chicago. On February 7, 2011, defendant posted the following article, entitled, "Anna and Jack Goral Live Where?" on his blog:

> "People who run for public office should know that they are running for a position of public trust.
>
> Anna Goral, a candidate for 23rd Ward alderman, says she knows that. On her website, she writes, 'I believe holding an elected position is a public trust.'
>
> OK so far.
>
> Anna says she lives in the 23rd Ward, at 6500 W. Archer; as does her husband, Jack Goral.
>
> But wait. Is that accurate?
>
> Check the online records of the Cook County Treasurer and the Cook County Recorder of Deeds; specifically, look up the residential property at 7 Cinnamon Creek Drive, in southwest suburban Palos Hills.

---

[1]Plaintiff's complaint also named "John Does 1-5" as defendants, but they were not identified and did not participate in the trial court proceedings. We thus refer to Kulys as "defendant."

Those county records identify Anna Goral as the owner, and that she purchased it in 2009, the last year records are available.

As many of us know, the homeowner's exemption can save you a lot of money on your taxes. For the Cinnamon Creek Drive property, Anna Goral reduced her taxes by $1,496.39 last year when she received the homeowner's exemption, according to records posted on the website of the Cook County Assessor.

Here's where it gets interesting.

State law requires that owners live in the property for which they are seeking the 'homeowner exemption' tax break. Violation of the law governing homeowner exemptions is a Class A misdemeanor, punishable by up to a year in jail and a maximum fine of $2,500.

**So here's what it boils down to**: either Anna Goral lives in the city–at 6500 W. Archer, as she stated in writing to the Chicago Board of Elections (her notarized nominating petitions)–or she lives in Palos Hills, as the Cook County government websites appear to indicate.

If she lives in Palos Hills, she is not qualified to run for alderman of Chicago's 23rd Ward. If she lives in Chicago, then she may be in violation of state law.

**Which is it?**

The appropriate authorities will sort this out. I have shared the information with the Cook County Assessor's Office, as well as the Cook County State's Attorney's Office. I expect they will investigate and render a decision.

The Cook County Assessor's Office, which records tax data on approximately 1.5 million pieces of property, has traditionally relied on tips from citizens and journalists about alleged abuses of the homeowner exemption.

Additionally, I note that the Cook County government's online records appear to indicate that Anna Goral's husband, Jack Goral, claims homeowner exemptions on two residences, which if true is also a violation of state law. The residences are 8828 Concord Lane, in southwest suburban Justice, and 6500 W. Archer in the city. On the property in Justice, Jack received a tax break of $961.75 last year. On the Archer Avenue property, he got a tax break of $277.61.

I await word back from county authorities and will share it when I receive it." (Emphases in original.)

Plaintiff lost the election on February 22, 2011.

¶ 4   On April 14, 2011, defendant posted another article entitled, "Where is [*sic*] Anna and Jack … an Assessor's update." The article restated the assertions in defendant's February 7, 2011 article and added the following:

"**Here's the update**: I spoke on the phone with Kelley Quinn of the Cook County Assessor's Office, who told me that the Goral-owned residences have been places [*sic*] in the '**Denied**' file–meaning that the Goral's [*sic*] will no longer automatically receive their homeowners tax breaks. If they want to straighten things out, they will have to appear in person with state issued identification to prove where they actually live.

Quinn said that the Assessor's Office will mail a letter to the Gorals, informing them of the action.

'There are people out there who try to screw the system,' Quinn told me. 'Sometimes, it's intentional. Sometimes not.' Quinn added that people who get homeowner tax breaks that shouldn't are required to pay the money back. As an example, she mentioned a person who recently walked in and cut a check for $13,000 to settle up.

As many such cases do, the Goral case is doubtless going to the Cook County State's Attorney's Office for assessment. When I hear from them, I will share what I learn." (Emphases in original.)

¶ 5    On May 26, 2011, plaintiff filed suit in the circuit court of Cook County, alleging that defendant's articles defamed her. Plaintiff alleged that the articles falsely "impute[d] criminal conduct that [defendant] allege[d] was committed by Plaintiff for a financial gain." Plaintiff asserted that she bought the house in Palos Hills in 2009 as an investment property and obtained a credit to pay the real estate taxes from the sellers. According to plaintiff's complaint, "the homeowner's exemption used was the seller's homeowner's exemption," and "[s]ubsequent payments will be the Plaintiff's real estate tax payments and will not be reduced by a homeowner's exemption." Plaintiff claimed that defendant published the articles "with the sole intent to confuse members of the public and to cause members of the public to not vote for Plaintiff in the aldermanic election as Plaintiff was labeled as untrustworthy and a liar." Plaintiff also alleged that defendant published the articles with actual malice, knowing that they were false.

¶ 6    Plaintiff claimed that defendant's articles damaged her real estate business and her political reputation. Plaintiff asked the court to award compensatory damages in "an amount that exceeds $50,000," as well as punitive damages. Plaintiff also requested that the court enjoin defendant from continuing to post the articles on his website, "[f]orbid future unlawful, false, or misleading statements, publications or utterances by Defendant[ ] against Plaintiff," and order defendant to "[m]ake actual written retractions and inform the members of th[e] public that Plaintiff's actions which were complained about by Defendant[ ] were not unlawful acts and were rather lawful, common and ordinary acts."

¶ 7    On July 11, 2011, defendant filed a motion to dismiss plaintiff's complaint pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2010)). On November 15, 2011, the trial court denied defendant's section 2-615 motion to dismiss.

¶ 8    On November 28, 2011, plaintiff filed a statement of candidacy with the State Board of Elections declaring her candidacy for state representative in the 23rd legislative district. Plaintiff listed her address as "6500 W. Archer Ave." in Chicago. The statement of candidacy indicated that the primary election was scheduled to take place on March 20, 2012.

¶ 9    On September 13, 2012, defendant filed a motion to dismiss plaintiff's complaint pursuant to section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2010)), asserting that the Act barred plaintiff's suit. Defendant asserted that plaintiff's suit was a meritless, retaliatory suit designed to chill defendant's exercise of his rights to free speech and political participation. Defendant attached printouts from the Cook County assessor's office's website that indicated that the homes in Chicago and in Palos Hills had received homeowner's exemptions in 2009. Defendant also attached printouts from the Cook County treasurer's website that listed the 2009 tax year bills for the Chicago and Palos Hills properties. For the Palos Hills property, the treasurer listed, "ANN GORAL, 6500 W ARCHER, CHICAGO, IL" under the heading, "Mailing Information," and indicated that the

property had received a homeowner's exemption. The same information was listed for the Chicago property.

¶ 10     Plaintiff filed a response to defendant's motion to dismiss, but it is not included in the record on appeal. In defendant's reply to plaintiff's response, he included plaintiff's statement of candidacy for the state representative election. Defendant also attached plaintiff's answers to his first set of interrogatories to his reply. In her answers, plaintiff asserted that she received 33.5% of the vote (5,510 votes) in the aldermanic election and her opponent, Michael Zalewski, received 52.64% of the vote (8,658 votes). Plaintiff noted that defendant's website received 9,154 views, which she asserted "caused Alderman Zalewski to receive a couple of thousand additional votes" and "caused Plaintiff to lose the Aldermanic election." Plaintiff stated that, if she received 420 more votes, she would have been able to participate in a runoff election with Zalewski. In commenting on how defendant's statements lowered her reputation in the eyes of the community, plaintiff stated that she "already lost an aldermanic election and may lose the current election as a result of Defendant's false publications." Plaintiff said that she sought "$110,000 reimbursement for her expenses in running for Alderman of the 23rd Ward," "attorney's fees, litigation costs and per se damages in the amount of $1 Million," and that she "may seek reimbursement of her expenses incurred in running for State Representative as Defendant is continuing to publish his false accusations against [her] on his web site." Plaintiff asserted that she suffered emotional distress from defendant's publications and that defendant "adversely affected her political ambitions and [put] her future *** in jeopardy." Plaintiff also noted that her homestead exemption for her Chicago home was taken away and she "has to take the time and correct this error."

¶ 11     On January 15, 2013, while defendant's section 2-619(a)(9) motion to dismiss was pending, the trial court entered an order dismissing plaintiff's case for want of prosecution. On February 19, 2013, the trial court issued a written memorandum and order granting defendant's section 2-619(a)(9) motion, finding that the Act barred plaintiff's suit. On March 8, 2013, defendant filed a motion asking the trial court to vacate the January 15, 2013 dismissal for want of prosecution and confirm the February 19, 2013 order. On March 15, 2013, the trial court granted defendant's motion, vacated the dismissal for want of prosecution, and reentered its February 19, 2013 written order.

¶ 12     On March 19, 2013, defendant filed a motion seeking attorney fees under the Act. The trial court ordered plaintiff to respond to that motion by April 29, 2013. The trial court also ordered plaintiff to file any motion to reconsider the dismissal of her complaint by that date. On May 3, 2013, plaintiff filed a motion asking the trial court to reconsider the dismissal of her complaint.

¶ 13     The trial court denied plaintiff's motion to reconsider on September 12, 2013 and indicated that a supplemental order would follow. On September 13, 2013, the trial court entered the supplemental order that stated that plaintiff's complaint was meritless. The supplemental order also stated, "The Court further finds there is no just reason for delaying either enforcement or appeal of this matter pursuant to Illinois Supreme Court Rule 304(a)." The trial court continued the case for consideration of defendant's claim for attorney fees.

¶ 14     On October 11, 2013, plaintiff filed a notice of appeal. After plaintiff filed her opening brief in this court, defendant moved to dismiss plaintiff's appeal for want of jurisdiction. This court entered an order taking defendant's motion to dismiss with the case.

## II. ANALYSIS

Before reaching the issue of whether the Act barred plaintiff's suit, we must first address defendant's motion to dismiss plaintiff's appeal for want of jurisdiction.

### A. Appellate Jurisdiction

Defendant argues that this court lacks jurisdiction because plaintiff's notice of appeal was untimely. Defendant contends that plaintiff failed to file her motion to reconsider the trial court's dismissal of her complaint within 30 days of the entry of that order. According to defendant, because plaintiff's motion to reconsider was not timely, plaintiff's notice of appeal, which was filed more than 30 days after the trial court dismissed plaintiff's complaint, was also untimely.

Plaintiff responds that she was not required to file her motion to reconsider within 30 days of the trial court's order dismissing her complaint because the trial court's March 15, 2013 order was not a final order. Rather, plaintiff contends, that order was merely interlocutory, as defendant's request for attorney fees remained pending. Plaintiff argues that the trial court did not issue a final, appealable order until September 13, 2013, when it denied plaintiff's motion to reconsider and stated that there was no just reason for delaying appeal pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010). According to plaintiff, her October 11, 2013 notice of appeal was thus timely. For the reasons that follow, we agree with plaintiff.

"To vest the appellate court with jurisdiction a party must file a notice of appeal within 30 days after entry of the judgment appealed from, or within 30 days after entry of an order disposing of a *timely* post-[judgment] motion." (Emphasis added.) *Archer Daniels Midland Co. v. Barth*, 103 Ill. 2d 536, 538 (1984); see also Ill. S. Ct. R. 303(a)(1) (eff. May 30, 2008). Section 2-1203(a) of the Code of Civil Procedure requires that a postjudgment motion be filed within 30 days of the judgment. 735 ILCS 5/2-1203(a) (West 2012). If a party files a postjudgment motion more than 30 days after the entry of final judgment, the motion will not toll the time for filing a notice of appeal. *In re Application of the County Treasurer*, 214 Ill. 2d 253, 261 (2005). Yet "[s]ection 2-1203 applies only to motions following final judgments, and if the *** ruling [at issue] was not final, then there [is] no 30-day limit within which to file [a] motion to reconsider." *Lampe v. Pawlarczyk*, 314 Ill. App. 3d 455, 470 (2000). That is because "the circuit court has inherent power to amend and revise *** an order prior to final judgment." *Brown v. Scotillo*, 104 Ill. 2d 54, 59 (1984) (citing *Towns v. Yellow Cab Co.*, 73 Ill. 2d 113, 121 (1978)).

In this case, the trial court initially granted defendant's motion to dismiss on February 19, 2013. On March 15, 2013, after being informed that plaintiff's suit had already been dismissed for want of prosecution, the trial court granted defendant's motion to vacate the dismissal for want of prosecution and to reenter the order granting defendant's motion to dismiss. On March 19, 2013, defendant filed a motion requesting attorney fees. On May 3, 2013, plaintiff filed her motion to reconsider. The trial court denied the motion to reconsider on September 12, 2013. On September 13, 2013, the court found that there was no further reason to delay an appeal from the denial of plaintiff's motion to reconsider and continued defendant's request for attorney fees. Plaintiff filed a notice of appeal on October 11, 2013. If

the trial court's March 15, 2013 order was a final, appealable order, plaintiff's May 3, 2013 motion to reconsider was untimely under section 2-1203(a) and her notice of appeal was likewise untimely. If, however, the March 15, 2013 order was not final, then the trial court retained jurisdiction over plaintiff's motion to reconsider even after 30 days had elapsed.

¶ 22    A final order is one that "resolve[s] every right, liability or matter raised." *Marsh v. Evangelical Covenant Church of Hinsdale*, 138 Ill. 2d 458, 465 (1990). In determining whether an order that does not resolve a claim for fees constitutes a final, appealable order, "courts have made a distinction between a claim for fees brought as part of the principal action and a claim made after the principal action has been decided." *In re Estate of Kunsch*, 342 Ill. App. 3d 552, 556 (2003) (citing *Berger v. Matthews*, 216 Ill. App. 3d 942, 944 (1991)). Where "a proceeding for attorney fees is within and a part of the underlying civil action, the issue must be resolved before the action becomes appealable." *Kunsch*, 342 Ill. App. 3d at 556 (citing *Berger*, 216 Ill. App. 3d at 944). In *Bale v. Barnhart*, 343 Ill. App. 3d 708, 711-12 (2003), for example, this court held that an order granting the defendant's motion to dismiss pursuant to section 2-619 was not a final order because it "left unresolved the issue of attorney fees–an issue raised in the [motion to dismiss]."

¶ 23    The proceedings in this case mirror those in *Bale*. The trial court in this case granted defendant's motion to dismiss plaintiff's complaint pursuant to section 2-619. In defendant's motion to dismiss, he requested attorney fees. The trial court did not rule upon defendant's request at the time it granted defendant's motion to dismiss. The court's March 15, 2013 order was thus not final and plaintiff was not required to file her motion to reconsider that order within 30 days pursuant to section 2-1203(a).

¶ 24    As the trial court did not enter final judgment in its March 15, 2013 order, it retained the "inherent power to amend and revise" that order while defendant's attorney fees claim remained pending. *Brown*, 104 Ill. 2d at 59. The trial court thus possessed jurisdiction to permit plaintiff to file her motion to reconsider more than 30 days after dismissing plaintiff's complaint. See, *e.g.*, *Spurgeon v. Alton Memorial Hospital*, 285 Ill. App. 3d 703, 707 (1996) (the trial court retained jurisdiction to grant the plaintiff an extension of time to file a posttrial motion where the defendant's motion to reconsider the issue of costs remained pending). Nothing in the record suggests that the trial court abused its discretion in permitting plaintiff to file her motion to reconsider, and defendant does not argue that the late filing prejudiced him. See *In re Marriage of Brownfield*, 283 Ill. App. 3d 728, 732 (1996) ("[T]he trial court has discretion to allow parties to file late pleadings and may do so unless it can be demonstrated the opposing party would be prejudiced by the late filing.").

¶ 25    This determination does not end our inquiry, however. We must still determine whether we have jurisdiction over plaintiff's appeal, as the trial court's March 15, 2013 order did not dispose of defendant's claim for attorney fees. Generally, "a notice of appeal may not be filed until after the trial court has finally disposed of all claims." *John G. Phillips & Associates v. Brown*, 197 Ill. 2d 337, 342 (2001). Illinois Supreme Court Rule 304(a) governs appeals from orders that do not dispose of all matters presented to the trial court:

> "If *** multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the *** claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both. Such a finding may be made at the

time of the entry of the judgment or thereafter on the court's own motion or on motion of any party." Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010).

A party appealing under Rule 304(a) must file a notice of appeal within 30 days of the entry of the trial court's finding that there is no just reason for delaying appeal. *Id.* Under Rule 304(a), an order "must be final in the sense that it disposes of the rights of the parties, either upon the entire controversy or upon some definite and separate part thereof." (Internal quotation marks omitted.) *In re Estate of French*, 166 Ill. 2d 95, 101 (1995). A request for attorney fees is a "claim" within the meaning of Rule 304(a). *F.H. Prince & Co. v. Towers Financial Corp.*, 266 Ill. App. 3d 977, 983 (1994).

¶ 26 In this case, the trial court dismissed plaintiff's complaint but, as noted above, the issue of attorney fees remains pending. As defendant's claim for attorney fees has not been disposed of, plaintiff could only appeal the dismissal of her complaint if she can establish the requirements of Rule 304(a). On September 12, 2013, the trial court denied plaintiff's motion to reconsider the dismissal of her complaint. On September 13, 2013, the trial court entered a supplemental order reiterating its denial of plaintiff's motion to reconsider and further stating, "The Court finds there is no just reason for delaying either enforcement or appeal of this matter pursuant to Illinois Supreme Court Rule 304(a)." The trial court thus complied with Rule 304(a) and made its ruling on defendant's motion to dismiss final and appealable despite the pending attorney-fees claim. *E.g.*, *Villanueva v. Toyota Motor Sales, U.S.A., Inc.*, 373 Ill. App. 3d 800, 801-02 (2007) (inclusion of Rule 304(a) language made an order granting a section 2-619 motion as to two of plaintiffs' counts final and appealable). Plaintiff timely filed her notice of appeal on October 11, 2013, vesting this court with jurisdiction.

¶ 27 For the reasons stated above, we have jurisdiction to consider plaintiff's appeal. We deny defendant's motion to dismiss plaintiff's appeal. We now address whether the trial court erred in granting defendant's motion to dismiss plaintiff's complaint.

¶ 28                                    B. Citizen Participation Act

¶ 29 Plaintiff asserts that the trial court erred in dismissing her defamation suit because she had a valid claim of defamation. Defendant claims he was immune from suit under the Act because he exercised his protected political rights in posting the articles about plaintiff's property tax exemptions and plaintiff's suit was designed to prevent him from further exercising his rights. For the reasons stated below, we agree with defendant.

¶ 30 A motion to dismiss based upon immunity under the Act is "appropriately raised in a section 2-619(a)(9) motion." *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 54. "A motion to dismiss under section 2-619 admits the legal sufficiency of the plaintiff['s] complaint, but asserts an affirmative defense or other matter that avoids or defeats the plaintiff['s] claim." (Internal quotation marks omitted.) *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 13. "When ruling on the motion, the court should construe the pleadings and supporting documents in the light most favorable to the nonmoving party." *Sandholm*, 2012 IL 111443, ¶ 55. "The court must accept as true all well-pleaded facts in plaintiff's complaint and all inferences that may reasonably be drawn in plaintiff's favor." *Id.* "In ruling on a motion to dismiss under section 2-619, the trial court may consider pleadings, depositions, and affidavits." *Zedella v. Gibson*, 165 Ill. 2d 181, 185 (1995). "When supporting affidavits have not been challenged or contradicted by counter-affidavits or other appropriate means, the facts stated therein are deemed admitted." *Id.*

¶ 31    We review *de novo* the trial court's dismissal of a complaint pursuant to section 2-619. *Riseborough*, 2014 IL 114271, ¶ 13. The question of whether the Act immunized defendant from suit is also a question of statutory construction, which we review *de novo*. *Sandholm*, 2012 IL 111443, ¶ 41.

¶ 32    The Act was intended to protect individuals from lawsuits designed to prevent them from exercising their political rights, also known as Strategic Lawsuits Against Public Participation (SLAPPs). 735 ILCS 110/5 (West 2010); *Sandholm*, 2012 IL 111443, ¶ 33. The Act accordingly immunizes from liability any "[a]cts in furtherance of the constitutional rights to petition, speech, association, and participation in government *** , regardless of intent or purpose, except when not genuinely aimed at procuring favorable government action, result, or outcome." 735 ILCS 110/15 (West 2010). The Act provides that a defendant may move to dismiss a lawsuit "on the grounds that the claim is based on, relates to, or is in response to any act or acts of the moving party in furtherance of the moving party's rights of petition, speech, association, or to otherwise participate in government." *Id.*

¶ 33    In *Sandholm*, the Illinois Supreme Court limited the Act's application to SLAPPs, which the court defined as lawsuits "*solely* based on, relating to, or in response to 'any act or acts of the moving party in furtherance of the moving party's rights of petition, speech, association, or to otherwise participate in government.' " (Emphasis in original.) *Sandholm*, 2012 IL 111443, ¶ 45 (quoting 735 ILCS 110/15 (West 2008)). The *Sandholm* court further held that, "where a plaintiff files suits genuinely seeking relief for damages for the alleged defamation *** of defendants, the lawsuit is not" a SLAPP. *Id.*

¶ 34    Three requirements must be met for a lawsuit to be subject to dismissal under the Act:

> "(1) the defendants' acts were in furtherance of their right to petition, speak, associate, or otherwise participate in government to obtain favorable government action; (2) the plaintiffs' claims are solely based on, related to, or in response to the defendants' 'acts in furtherance'; and (3) the plaintiffs fail to produce clear and convincing evidence that the defendants' acts were not genuinely aimed at solely procuring favorable government action." *Hammons v. Society of Permanent Cosmetic Professionals*, 2012 IL App (1st) 102644, ¶ 18 (citing *Sandholm*, 2012 IL 111443, ¶¶ 53-57).

The defendant bears the burden of proving the first two prongs, after which the burden shifts to the plaintiff to establish the third prong. *Garrido v. Arena*, 2013 IL App (1st) 120466, ¶ 16. We examine each of these elements in turn.

### 1. Whether Defendant's Acts Were in Furtherance of His Political Rights

¶ 36    The parties agree that the first prong is established in this case. Defendant's articles, questioning plaintiff's eligibility to run for alderman, were written in furtherance of his right to speak and participate in government. See *Garrido*, 2013 IL App (1st) 120466, ¶¶ 3, 5-6, 17 (negative advertisements about an aldermanic candidate satisfied the first prong of the test for the applicability of the Act).

### 2. Whether Plaintiff's Suit Was Meritless and Retaliatory

¶ 38    Turning to the second prong, to establish that plaintiff's suit was "solely based on" defendant's exercise of his political rights, defendant must show that plaintiff's suit " 'is

meritless and was filed in retaliation against [his] protected activities in order to deter [him] from further engaging in those activities.' " *Garrido*, 2013 IL App (1st) 120466, ¶ 18 (quoting *Ryan v. Fox Television Stations, Inc.*, 2012 IL App (1st) 120005, ¶ 21). We first look to whether plaintiff's suit was meritless, then turn to whether plaintiff filed her suit in retaliation to defendant's publishing the articles in question.

¶ 39                                a. *Whether Plaintiff's Suit Was Meritless*

¶ 40       This court has held that a claim is "meritless" under the Act if the defendant "disproves some essential element of the [plaintiff's] claim." *Garrido*, 2013 IL App (1st) 120466, ¶ 19. By contrast, the existence of an affirmative defense does not establish that a plaintiff's claim is "meritless" under the second prong. *Id.* ¶ 27. In order to determine whether plaintiff's suit is meritless in this case, we must examine plaintiff's defamation claim.

¶ 41       The essential elements of a defamation claim are: (1) that the defendant made a false statement about the plaintiff; (2) that the defendant made an unprivileged publication of that statement to a third party; and (3) that the publication caused damages. *Green v. Rogers*, 234 Ill. 2d 478, 491 (2009). If a defendant's statements constitute defamation *per se* the plaintiff need not prove damages. *Id.* at 495. "In Illinois, there are five categories of statements that are considered defamatory *per se*: (1) words that impute a person has committed a crime; (2) words that impute a person is infected with a loathsome communicable disease; (3) words that impute a person is unable to perform or lacks integrity in performing her or his employment duties; (4) words that impute a person lacks ability or otherwise prejudices that person in her or his profession; and (5) words that impute a person has engaged in adultery or fornication." *Id.* at 491-92.

¶ 42       When we assess whether a statement constitutes defamation *per se*, "statements reasonably capable of an innocent construction should be interpreted as nondefamatory." *Tuite v. Corbitt*, 224 Ill. 2d 490, 504 (2006). In applying the innocent construction rule, we must consider the alleged defamatory words " 'in context, with the words and the implications therefrom given their natural and obvious meaning.' " *Id.* at 503 (quoting *Chapski v. Copley Press*, 92 Ill. 2d 344, 352 (1982)).

¶ 43       Plaintiff's complaint alleged that defendant's articles constituted defamation *per se* because they implied that she either violated state law in order to obtain a homeowner's exemption or committed perjury in her board of election filings. Defendant asserts that plaintiff's suit is meritless because the statements in defendant's articles were true and his statements did not impute that plaintiff committed a crime.

¶ 44       Plaintiff avers that the following statements accused her of committing a criminal offense:

> "[E]ither [plaintiff] lives *** at 6500 W. Archer, as she stated in writing to the Chicago Board of Elections *** or she lives in Palos Hills, as the Cook County government websites appear to indicate. *If* she lives in Palos Hills, she is not qualified to run for alderman of Chicago's 23rd Ward. *If* she lives in Chicago, then she *may* be in violation of state law." (Emphases added.)

Defendant did not directly accuse plaintiff of violating state law or lying in her campaign filings in these statements. Instead, defendant conditioned his statements upon the existence of other facts–plaintiff's residing in Palos Hills or Chicago–neither of which defendant

- 10 -

asserted to be true. Defendant's articles simply noted that the "online records" of the Cook County treasurer and assessor listed plaintiff as the owner of both properties. Defendant attached the online records from the Cook County assessor and treasurer to his motion to dismiss. As defendant's statements were true, they cannot form the basis of a defamation claim.

¶ 45 Plaintiff claims that defendant should have known that the homestead exemption applied to her 2009 property taxes belonged to the previous owner of the Palos Hills home because plaintiff bought the home in 2009. Plaintiff states that defendant "knew these facts because [he] was a hearing officer for the Cook County Assessor's office for ten years according to [his] profile on Linkedin [*sic*]." Nothing in the record supports plaintiff's claim about defendant's employment. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984) ("Any doubts which may arise from the incompleteness of the record will be resolved against the appellant."). Even accepting this claim, however, defendant's assertions were true. Plaintiff's complaint asserted that "the sellers provided her with a credit to pay the 2008 real estate taxes in 2009." Defendant's article asserted that the assessor's office's online records indicated that plaintiff had received a homestead exemption for her 2009 property taxes, not her 2008 taxes. The online records of the Cook County assessor's office submitted by defendant demonstrate this fact. Even if defendant knew that plaintiff had received a credit for her 2008 taxes, that would have no bearing on defendant's article, which discussed plaintiff's 2009 property taxes. Defendant also did not accuse plaintiff of violating the law with regard to her 2009 property taxes. Instead, he wrote, "If [plaintiff] *lives* in Chicago, she may be in violation of state law." (Emphasis added.) At most, defendant suggested that plaintiff may be violating the law if she lived in Chicago in 2011 and continued to claim a homestead exemption in Palos Hills. That statement is true. See 35 ILCS 200/15-175 (West 2010) (requiring property to be the owner's "principal dwelling place" in order to qualify for a homestead exemption).

¶ 46 Plaintiff's suit was also meritless because defendant's statements were reasonably capable of an innocent construction. This court has held that a statement does not constitute defamation *per se* where the statement leaves the question of whether a crime was committed to government authorities rather than claiming that a crime had in fact occurred. In *Dubinsky v. United Airlines Master Executive Council*, 303 Ill. App. 3d 317, 321-22 (1999), for example, the defendant, a member of an airline pilots' union, wrote an article that alleged that the plaintiffs may have violated federal law during a buyout of an airline. The defendant wrote that "whether or not RICO [(18 U.S.C. § 1961 *et seq.* (1994 & Supp. 1996))] or other federal laws apply will be decided in civil court or by the Justice Department." (Internal quotation marks omitted.) *Id.* at 326. He also noted that RICO "was specifically written for such questions as bribery, money offered to influence negotiations, mail fraud, laundering money, embezzlement of union funds, collusion, conspiracy, kickbacks, enterprise to dominate labor unions, etc." (Internal quotation marks omitted.) *Id.* The court held that these remarks were reasonably capable of an innocent construction because they "[did] not directly accuse plaintiffs of illegal activity; rather, [they] note[d] that the Justice Department is responsible for determining whether RICO laws apply *** and whether criminal activity occurred is a question for the courts to determine." *Id.* at 327.

¶ 47 Similarly, in *Cartwright v. Garrison*, 113 Ill. App. 3d 536, 538-39 (1983), the defendant, a school board member, gave an interview to a reporter in which he alleged that the board

- 11 -

had violated the Open Meetings Act (Ill. Rev. Stat. 1981, ch. 102, ¶ 41 *et seq.*) and committed other "misdeeds." (Internal quotation marks omitted.) The plaintiff, the superintendent of the board, asserted that the following statement was defamatory because it imputed that he committed a crime: "Whatever legal ramifications result from [the] investigation–which could range from the superintendent losing his certification to criminal penalties–is up to the [S]tate's [A]ttorney. I think that the public will demand changes once all the information is brought out by the [S]tate's [A]ttorney." (Internal quotation marks omitted.) *Id.* at 539. The court concluded that these statements, taken in context, "may reasonably be interpreted to mean that the State's Attorney would determine if any crime had been committed." *Id.* at 542. The court noted that the defendant's reference to the possible penalties the plaintiff could face could "reasonably be read as defendant's opinion on the range of possible penalties if the State's Attorney determined a crime had been committed." *Id.* As the words could "reasonably be interpreted as not accusing plaintiff of a crime," the court concluded that they were "not actionable as a matter of law." *Id.*

¶ 48     Defendant's articles in this case resemble the statements at issue in *Dubinsky* and *Cartwright* because they conditioned the existence of any crime upon the outcome of an investigation by the authorities. Defendant qualified his statements by saying that "[t]he appropriate authorities will sort this out" and that he "await[ed] word back from county authorities" regarding the information he gave them. In his April 14, 2011 article, defendant added that he spoke to a representative of the assessor's office, who said that plaintiff could "straighten things out" by proving which home was her primary residence. Defendant also noted that some people unintentionally obtain more than one homestead exemption and that the matter would likely go "to the Cook County State's Attorney's Office for assessment." Each of these statements further qualified defendant's articles by leaving the question of whether any violation of the law occurred to the assessor's office and the State's Attorney. Read in context, defendant's articles simply informed readers of information that he uncovered and noted the possibility of plaintiff's ineligibility to run for alderman. Like the *Dubinsky* and *Cartwright* courts, we conclude that defendant's statements, read in context, may be reasonably interpreted as not accusing plaintiff of a crime.

¶ 49     Plaintiff cites *Hadley v. Subscriber Doe*, 2014 IL App (2d) 130489, *appeal allowed*, No. 118000 (Ill. Sept. 24, 2014), in support of her contention that her suit had merit. In *Hadley*, the defendant posted a comment to an article about the plaintiff, a county board candidate, stating, "[The plaintiff] is a Sandusky waiting to be exposed." (Internal quotation marks omitted.) *Id.* ¶ 3. The court held that this statement was not reasonably capable of an innocent construction because "the idea intended to be conveyed *** by [those] words *** is that [the plaintiff] is a pedophile." *Id.* ¶ 27. The court noted that the Penn State University sexual assault scandal involving Jerry Sandusky "had dominated the national news for weeks" at the time the defendant posted the comment. *Id.*

¶ 50     This case is distinguishable from *Hadley*. Unlike the defendant in *Hadley*, defendant in this case did not directly state that plaintiff *is* violating state election or property tax law. To the contrary, defendant noted that *if* plaintiff lived in Palos Hills, she was ineligible to run for alderman, and *if* plaintiff lived in Chicago, she *may* be violating state law in obtaining a homestead exemption for her Palos Hills home. Importantly, defendant wrote that authorities with the assessor's office and the State's Attorney's office would ultimately decide whether

plaintiff had violated any laws. Defendant's statements are thus distinct from those at issue in *Hadley*.

¶ 51    Plaintiff also contends that the trial court's denial of defendant's section 2-615 motion to dismiss demonstrates that her suit had merit. Plaintiff neglects the difference between motions to dismiss under section 2-615 and section 2-619(a)(9). A section 2-619(a)(9) motion "admits the legal sufficiency of the complaint," whereas, "in a section 2-615 motion, a party denies the legal sufficiency of the complaint." (Emphases omitted.) *Winters v. Wangler*, 386 Ill. App. 3d 788, 792 (2008). "A motion to dismiss based on the immunity conferred by the Act *** is *** appropriately raised in a section 2-619(a)(9) motion," not a section 2-615 motion. *Sandholm*, 2012 IL 111443, ¶ 54. In his section 2-615 motion to dismiss, defendant argued that plaintiff failed to plead with specificity the alleged defamatory words, failed to adequately specify what damages she incurred, and improperly requested injunctive relief. Defendant did not argue that his statements were true or reasonably capable of an innocent construction. The trial court's finding regarding the sufficiency of plaintiff's complaint thus has no bearing on his section 2-619(a)(9) motion to dismiss, which raised his immunity under the Act.

¶ 52    Having found that defendant's statements were true and capable of a reasonable innocent construction, plaintiff cannot state a claim of defamation *per se* as a matter of law. Plaintiff's lawsuit is thus meritless.

¶ 53                    b. *Whether Plaintiff's Suit Was Retaliatory*

¶ 54    We now turn to whether plaintiff's suit was retaliatory, *i.e.*, whether it was "a strategic lawsuit intended to chill participation in government or to stifle political expression," as opposed to a suit that "seek[s] damages for the personal harm to [plaintiff's] reputation from defendant['s] alleged defamatory *** acts." *Sandholm*, 2012 IL 111443, ¶ 57. To conduct this inquiry, courts have looked to two factors: "(1) the proximity in time between the protected activity and the filing of the complaint, and (2) whether the damages requested are reasonably related to the facts alleged in the complaint and are a 'good-faith estimate of the extent of the injury sustained.'" *Ryan v. Fox Television Stations, Inc.*, 2012 IL App (1st) 120005, ¶ 23 (quoting *Hytel Group, Inc. v. Butler*, 405 Ill. App. 3d 113, 126 (2010)). We have recognized that these factors are not "exclusive *** and there may well be other factors that are relevant in future cases." *Ryan*, 2012 IL App (1st) 120005, ¶ 23.

¶ 55    In this case, both of the above factors weigh in defendant's favor. Defendant's first article ran on February 7, 2011 and his second article ran on April 14, 2011. Plaintiff filed suit against defendant on May 26, 2011. The relatively close proximity between the posting of defendant's articles and plaintiff's suit suggests that it was retaliatory. See *Hytel Group, Inc.*, 405 Ill. App. 3d at 114-15, 126 (finding that timing of lawsuit tended to show it was retaliatory where it was filed four months after the defendant engaged in protected acts).

¶ 56    Plaintiff also sought extensive damages in her suit. Courts have noted that "[d]emanding damages in the millions for alleged defamation is a classic SLAPP scenario." *Ryan*, 2012 IL App (1st) 120005, ¶ 24. In *Hytel Group, Inc.*, for example, the court found that the plaintiff's defamation suit was retaliatory because "the extraordinarily high damages" it sought–$8 million–were "intended to strike fear into the defendant." *Hytel Group, Inc.*, 405 Ill. App. 3d at 126. In this case, plaintiff requested compensatory damages exceeding $50,000 and an unspecified amount of punitive damages in her complaint. In her answers to defendant's

interrogatories, plaintiff specified that she was seeking $110,000 to recoup her expenses in running for alderman, as well as $1 million for "attorney's fees, litigation costs and per se damages." See *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 98 (1996) ("An interrogatory answer is considered equivalent to an affidavit for purposes of a section 2-619 motion to dismiss."). Plaintiff further stated that she "may seek reimbursement of her expenses incurred in running for State Representative as Defendant is continuing to publish his false accusations." Plaintiff's damage requests, exceeding $1 million and requesting an unspecified amount of punitive damages, resemble the damages the *Hytel Group, Inc.* court found to be retaliatory.

¶ 57        More importantly, the timing of plaintiff's suit and her requested relief suggests that she sued defendant in anticipation of her upcoming campaign for state representative. Plaintiff's November 28, 2011 statement of candidacy to the State Board of Elections stated that she planned to run for state representative in the March 20, 2012 primary election. Plaintiff acknowledged the same in her answers to defendant's interrogatories. In her complaint, plaintiff sought injunctive relief requiring defendant to publish a written retraction and prohibiting defendant from publishing future "misleading statements." In her answers to defendant's interrogatories, plaintiff stated that she "may lose the current election as a result of Defendant's false publications." She indicated that she "may seek reimbursement of her expenses incurred in running for State Representative" and that defendant "adversely affected her political ambitions and [put] her future *** in jeopardy." This evidence strongly suggests that plaintiff's suit was designed to prevent defendant from further exercising his right to speak about plaintiff's candidacy, rather than to seek recompense for defendant's acts.

¶ 58        This conclusion is bolstered by the fact that plaintiff did not request damages approximating the nonpolitical losses she claimed to have suffered due to defendant's articles. Specifically, plaintiff did not request damages approximating the losses her real estate business sustained as a result of defendant's statements. Even viewing the evidence in a light most favorable to plaintiff, we cannot escape the inference that her suit was not designed to redress the damage suffered as a result of defendant's articles; it was designed "to chill [defendant's] participation in government or to stifle [defendant's] political expression." *Sandholm*, 2012 IL 111443, ¶ 57. The trial court did not err in concluding that plaintiff's suit was retaliatory.

¶ 59        In sum, plaintiff's suit was meritless because defendant's statements were either true or capable of a reasonable, innocent construction. Plaintiff's suit was also retaliatory as it was designed to prevent defendant from engaging in further protected activity rather than to seek damages for defendant's allegedly defamatory acts. We conclude that defendant has met his burden with respect to the second prong of immunity under the Act. The burden thus shifts to plaintiff to demonstrate that defendant's acts were not solely aimed at procuring favorable government action.

¶ 60               3. Whether Defendant's Acts Were Aimed Solely at Procuring Government Action

¶ 61        The Act excludes from immunity those acts that are "not genuinely aimed at procuring favorable government action, result, or outcome." 735 ILCS 110/15 (West 2010). The plaintiff bears the burden of establishing that a defendant's acts were not genuinely aimed at

procuring favorable government outcome by clear and convincing evidence. 735 ILCS 110/20(c) (West 2010); *Sandholm*, 2012 IL 111443, ¶ 56.

¶ 62 Plaintiff asserts that defendant's acts were not aimed solely at procuring favorable government action because they were "made to further an illegal, improper campaign strategy for his good friend." Plaintiff contends that defendant was friends with the incumbent alderman of the 23rd ward, Michael Zalewski, and ran his articles in order to assist Zalewski in being reelected.

¶ 63 Accepting as true plaintiff's assertions regarding defendant's relationship with Zalewski, defendant's acts would still be aimed solely at procuring government action. Under the Act, "government" means "a branch, department, agency, instrumentality, official, employee, agent, or other person acting under color of law of the United States, a state, a subdivision of a state, or another public authority including the *electorate*." (Emphasis added.) 735 ILCS 110/10 (West 2010); see *Hammons*, 2012 IL App (1st) 102644, ¶ 22 ("An electorate is simply a body of qualified voters from a particular district or territory."). Applying this definition to this case, defendant's acts would be immune from suit even if they were solely aimed at procuring a favorable outcome from the electorate in the 23rd ward. Even if defendant hoped that plaintiff would lose the election and that Zalewski would be elected as a result of his articles, defendant's acts would be solely aimed at procuring a favorable government outcome.

¶ 64 We conclude that defendant has borne his burden of proving that his alleged defamatory statements were an exercise of his protected political rights and that plaintiff's suit was a meritless, retaliatory suit aimed to preclude defendant from further exercising those rights. Plaintiff has not proved by clear and convincing evidence that defendant made his statements for any reason other than to procure a favorable government outcome. We thus conclude that defendant was immune from suit under the Act and the trial court did not err in dismissing plaintiff's complaint.

¶ 65                                    III. CONCLUSION
¶ 66 For the reasons stated above, we affirm the trial court's dismissal of plaintiff's complaint.

¶ 67 Affirmed.