2021 IL App (1st) 201006-U

FIFTH DIVISION
October 29, 2021

No. 1-20-1006

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| SHELLY MARIE MADDY, | ) | Appeal from the |
| | ) | Circuit Court of Cook County. |
| Respondent-Appellant, | ) | |
| | ) | |
| v. | ) | 2019 COAD 321 |
| | ) | |
| JOHN AND JULIE MAZZOLA, | ) | Honorable Maureen Ward Kirby, |
| | ) | Judge Presiding. |
| Petitioners-Appellees. | ) | |

JUSTICE CONNORS delivered the judgment of the court.
Justices Hoffman and Cunningham concurred in the judgment.

**ORDER**

¶ 1    *Held:* The circuit court correctly determined that it did not have jurisdiction to review respondent's motion to revoke her consent to the adoption because it was untimely under the Illinois Adoption Act; affirming the circuit court's order that dismissed respondent's motion for lack of jurisdiction.

¶ 2    This appeal arises from the circuit court's August 20, 2020, order that dismissed Respondent-Appellant Shelly Marie Maddy's motion to revoke her consent to the adoption of Baby Girl M executed on April 23, 2019, and found that it did not have jurisdiction because the motion was untimely under section 50/11(a) of the Illinois Adoption Act (750 ILCS 50/11(a)

(West 2020)). Petitioners-Appellees, Julie and John, are the adoptive parents of Baby Girl M pursuant to a Judgment for Adoption order entered by the circuit court on October 28, 2019. Respondent now appeals *pro se* the circuit court's August 20, 2020, order. The circuit court correctly determined that it did not have jurisdiction to review respondent's motion to revoke her consent to the adoption, so we affirm the circuit court's order dismissing respondent's motion for lack of jurisdiction.

¶ 3                                    I. BACKGROUND

¶ 4        Respondent is the biological mother of Baby Girl M. The common law record shows that on April 23, 2019, respondent executed a "Final and Irrevocable Consent to Adoption by a Specified Person or Persons; Non DCFS case," which stated that she consented and agreed to the adoption of Baby Girl M by petitioners. The form further stated that respondent understood that "upon signing this consent I do irrevocably and permanently give up all custody and other parental rights I have to such child if such child is adopted by" petitioners and that she understood that she could not "under any circumstances, after signing this document, change my mind and revoke or cancel this consent or obtain or recover custody or any other rights over such child" if petitioners adopted the child. The consent form stated that respondent "read and understand the above and I am signing it as my free and voluntary act."

¶ 5        The record contains a notarized Certificate of Acknowledgement executed by an adoption representative, stating that respondent appeared before the representative in person on April 23, 2019, and that respondent "acknowledged that s/he signed and delivered such consent as his/her free and voluntary act, for the specified purpose." In the affidavit, the representative also stated: "I have fully explained that by signing such consent, s/he is irrevocably relinquishing all parental rights to such child and s/he has stated that such is his/her intention and desire."

¶ 6       The adoption representative executed a second notarized affidavit on April 23, 2019, in which she stated that she met with respondent on April 23, 2019, and that respondent "declined any counseling services from me"; "confirmed that she understood all the documents she was signing"; and "signed her Final and Irrevocable Consent By A Specified Person-Non-DCFS Case with Birthparent's Rights and Responsibilities-Private Form in my presence and did so knowingly and voluntarily." The Birth Parent Rights and Responsibilities-Private Form, which respondent signed on April 23, 2019, is contained in the record and states, *inter alia*, that respondent had the right to request to receive counseling before and after signing a Final and Irrevocable Consent to Adoption by a Specified Person or Persons-Non-DCFS Case, she could delay signing the consent if she was not ready to do so, and she could decline to sign it.

¶ 7       The record contains a choice of law affidavit executed by respondent on April 23, 2019, which states, *inter alia*, "I am voluntarily and knowledgably signing an Illinois Final and Irrevocable Consent to Adoption By a Specified Person or Person; Non-DCFS Case, together with other supporting documentation, in order to place my child for adoption with the adopting parents." The affidavit also states that she understood that "by signing an Illinois consent, my consent will be final and irrevocable except in cases of fraud or duress on the part of the adopting parents or their agent, or if the adopting parents do not complete their adoption of my child." She stated that she "submit[ted] to the jurisdiction of the courts of the State of Illinois and agree[d] that all matters relating to the adoption of my child shall be determined in accordance with laws of the State of Illinois."

¶ 8       The record contains a form entitled "Submission to Illinois Jurisdiction" signed by respondent and notarized on April 23, 2019, that states that respondent acknowledged she agreed to execute all documents relating to the termination of parental rights and adoption of Baby Girl

M pursuant to Illinois law and that she submitted to jurisdiction in Illinois and to have all of the legal proceedings pertaining to adoption occur in and be pursuant to the laws and jurisdiction of Illinois. The form states that she waived her rights to Pennsylvania jurisdiction and to Pennsylvania law applying in this matter. The common law record contains other documents executed by respondent on April 23, 2019, including an Indian Child Welfare Act Affidavit, a supplemental notarized affidavit regarding the Indian Child Welfare Act, and a notarized Affidavit of Living Expenses of Birthmother.

¶ 9        With respect to the father of Baby Girl M, on April 23, 2019, respondent filed an Affidavit of Identification, in which she identified a name for the biological father. The record contains a "Final and Irrevocable Waiver of Parental Rights of Putative or Legal Father" signed by the same person whom respondent identified in that affidavit, that stated as follows: "I understand that by signing this Waiver I do irrevocably and permanently give up all custody and other parental rights I may have to such child." The record also contains a "Default Order" entered by the circuit court on July 15, 2019, which terminated the unknown father's parental rights and stated that the unknown father had due notice of the proceeding by publication, had not filed an appearance or answer, and was in default.

¶ 10                Petition for Adoption and Judgment for Adoption Order

¶ 11        On April 24, 2019, petitioners filed in the circuit court a Petition for Adoption for Baby Girl M. The petition stated that respondent, the biological mother, who was represented by counsel, consented to the adoption of Baby Girl M by petitioners by an instrument in writing, properly executed in accordance with the laws of Illinois. Petitioners requested the court for leave to adopt Baby Girl M as their own child.

¶ 12　　　　On October 28, 2019, the circuit court entered the Judgment for Adoption order, which stated as follows. Respondent was the biological mother of Baby Girl M and was not under legal disability. Respondent consented to the adoption of Baby Girl M by petitioners "by an instrument in writing, properly executed in accordance with the laws of the State of Illinois, and specifically waived any and all notice to her as the biological mother of the child, provided that the petitioners complete their adoption of said child." The putative father named by respondent in the Affidavit of Identification was represented by counsel, was under no legal disability, waived his parental rights, and consented to the adoption in writing in accordance with the laws of Illinois. The parental rights of any unknown biological father of the child had been terminated. The allegations in the petition for adoption were true and proven and it was for the best interest of the child to grant petitioners' petition for adoption. The court ordered Baby Girl M to be all legal intents and purposes the child of petitioners.

¶ 13　　　　　　　　　Respondent's June 22, 2020, Letter to the Circuit Court

¶ 14　　　　On June 22, 2020, respondent filed a letter with the clerk of the circuit court, in which she stated, she "would like to file a motion to revoke my consent of adoption due to duress, and fraud."[1] The letter further stated, *inter alia*, as follows. Respondent lived in Pennsylvania and had depression, anxiety, and was on medication. In March 2019, she learned she was 33 weeks pregnant and was taken off her medication due to the possibility that she could harm her daughter. She stated: "I started to go through a withdrawal and along with the pregnancy I started to not be able to think clearly I researched to see who could help me with my daughter until I got

---

[1]Respondent's letter contained in the record does not contain a date as to when it was filed. However, according to the circuit court's August 20, 2020, order, respondent's letter was initially filed as a Confidential Intermediary case on June 22, 2020, and was subsequently dismissed. According to the court's August 20, 2020, order, the court thereafter provided respondent with the case number for the adoption case (2019 COAD 321) and respondent refiled the letter in the adoption case on July 30, 2020, and August 14, 2020.

back on my feet." She did not "have much memory of a lot due to the withdrawal" and she stated that the adoption agency sent me messages which she "ignored at first but somehow they ended up talking me into adoption I do not recall the conversations." She stated that "[t]hey hired an attorney for me but I don't remember being told the difference between the laws of adoption in Pennsylvania and Illinois, she did not know about my medication." Respondent stated that "[d]uring this time I was seeing a therapist she can't understand why they let me sign papers knowing I was unstable due to the medication withdrawal, plus I was forced to go back to work 2 days after giving birth I had no time to heal."

¶ 15        Respondent further stated in the letter as follows. She had been trying to revoke her consent since August 2019 and had been looking for an attorney in Pennsylvania until she learned in December 2019 that she needed an attorney in Chicago. Her search for an attorney in Chicago was extremely hard and when she finally found an attorney "he sat on my case for a month when he decided that he felt I needed someone more experienced." Attorneys from legal aid and the bar associations turned her down or had a conflict of interest. She finally found an attorney "who stated all I had to do was file a motion but that I only had 12 months from when I signed paperwork." Respondent stated that the COVID-19 pandemic had made things even harder, and she requested to reopen the adoption "due to the pandemic and businesses and courts being shut down" and "so I can give you the evidence of my mental state and the facts and that I was taken advantage of and lied to." She stated that "this adoption never should have happened I was taken advantage of and dont [*sic*] remember signing a lot of the paperwork." She stated that "I was also able to be influenced due to the withdrawal and the pregnancy I never had time to heal or think about what I was actually doing I was being pushed and pressured to sign."

¶ 16                        Circuit Court's August 20, 2020, Order

¶ 17       On August 20, 2020, the court entered an order on respondent's motion to revoke her consent. In its written order, the court concluded that respondent's motion was time-barred under section 50/11(a) of the Adoption Act (750 ILCS 50/11(a) (West 2018)) and that the court lacked jurisdiction to hear her motion. The court also stated it "dismissed with prejudice" respondent's motion to revoke her consent. In doing so, the court stated as follows. Respondent's letter did not cite any section of Illinois law as the basis for her request and under section 50/11(a) of the Adoption Act, respondent's motion was untimely. Section 50/11(a) states: "No action to void or revoke a consent or surrender for adoption, including an action based on fraud or duress, may be commenced after 12 months from the date the consent or surrender was executed." Respondent's letter was filed on June 22, 2020, which was 14 months after she signed her consent. The court stated that it continued to operate during the COVID-19 pandemic, noting that motions were filed either in person or electronically and the Adoption Court had been hearing matters remotely since March 17, 2020. The court also stated that "[o]ne of the principle tenets of the Adoption Act is permanency for a child and finality of the proceedings" and that respondent "with the benefit of counsel, voluntarily consented to the adoption" of Baby Girl M by petitioners. This appeal followed.

¶ 18                                II. ANALYSIS

¶ 19       We initially address the timeliness of our decision. This case is considered "accelerated" under Illinois Supreme Court Rule 311(a) (eff. July 1, 2017), which requires this court to issue a decision within 150 days after the filing of the notice of appeal, "[e]xcept for good cause shown." Ill. S. Ct. R. 311(a)(5) (eff. July 1, 2017). Respondent filed her notice of appeal on September 21, 2020. The 150-day period to issue our decision expired in February 2021. However, there was good cause for not meeting that deadline. Respondent filed a total of

five motions for extensions of time to file her opening brief, which we granted. On May 19, 2021, we granted respondent's fifth motion for extension of time to file her opening brief to June 24, 2021. Thereafter, petitioners filed their response brief on July 12, 2021, and respondent filed her reply brief on July 26, 2021. Accordingly, because this case was not ready for our review until July 26, 2021, we find good cause to issue our decision after the 150-day deadline set forth in Rule 311(a)(5). See *In re B'Yata I.*, 2013 IL App (2d) 130558, ¶ 26.

¶ 20       The circuit court dismissed respondent's motion and concluded it did not have jurisdiction because her motion was untimely under section 50/11(a) of the Adoption Act. Although an appellate court has no authority to address the substantive merits of a judgment entered by a trial court without jurisdiction, "that does not mean that the appellate court has no jurisdiction at all." *People v. Bailey*, 2014 IL 115459, ¶ 29. "[A] trial court's lack of jurisdiction is not a complete bar to the exercise of jurisdiction by the appellate court", but the "appellate court is limited to considering the issue of jurisdiction below." *Id.* Thus, we do not have jurisdiction to review the substantive merits of respondent's motion, and our jurisdiction is limited to determining whether the circuit court correctly concluded that it lacked jurisdiction. We agree with the circuit court that it did not have jurisdiction to hear respondent's motion to revoke her consent to the adoption.

¶ 21       Section 50/11(a) of the Adoption Act states, in relevant part, as follows: "No action to void or revoke a consent to or surrender for adoption, including an action based on fraud or duress, may be commenced after 12 months from the date the consent or surrender was executed." 750 ILCS 50/11(a) (West 2018). This court has previously stated the "one year statute of limitations contained in section 11 has consistently been interpreted by courts as being absolute." *In re Joseph B.*, 258 Ill. App. 3d 954, 970 (1994). The limitations period "is

controlling in an action challenging the validity of the consent to adoption." *In re Adoption of Samuel E.*, 401 Ill. App. 3d 250, 258 (2010). Further, the "statute of limitations, by its express terms, is applicable to cases involving allegations of fraud." *In re Adoption of J.W.,* 2016 IL App (5th) 150203, ¶ 8. The 12-month statute of limitations also applies to allegations of conflict of interest and applies regardless of whether an adoption has been finalized. *Id.* ¶¶ 8-9. "There is a strong public policy favoring the finality and stability of adoptions." *In re Adoption of Baby Girls Mandell*, 213 Ill. App. 3d 670, 674 (1991). And, in interpreting the statute of limitations in section 11 as absolute and "in rejecting the application of the discovery rule, courts have consistently based their decision in large part on the legislature's intent to promote the finality and stability of adoptions." *In re Joseph B.,* 258 Ill. App. 3d at 972.

¶ 22      Here, respondent executed the "Final and Irrevocable Consent to Adoption of a Specified Person or Persons; Non DCFS case" on April 23, 2019, in which she acknowledged that she was signing the form "as my free and voluntary act." Respondent filed her motion in the circuit court requesting to revoke her consent on June 22, 2020, which was 14 months after she executed the consent on April 23, 2019. Thus, respondent's motion to revoke her consent was commenced more than 12 months after the date her consent was executed. Respondent's motion was therefore untimely under the 12-month limitations period set forth in section 50/11(a) of the Adoption Act.

¶ 23      Respondent asserts that she signed the consent form under fraud and duress, she was "coerced into signing the papers while in an unstable mental health state," the paperwork was false, and the adoption papers were not correct and missing information. However, as previously discussed, under section 50/11(a), the statute of limitations expressly applies to cases involving allegations of fraud. *In re Adoption of J.W.,* 2016 IL App (5th) 150203, ¶ 8. Further, this court

has previously stated that "we find no ambiguity in the statutory language, nor in subsequent application of the statute by Illinois courts" and "section 11 clearly bars any action challenging a consent or surrender after 12 months." *In re Adoption of Samuel E.,* 401 Ill. App. 3d at 260. Accordingly, the circuit court properly determined that respondent's motion to revoke her consent was untimely under section 50/11(a) of the Adoption Act and that it did not have jurisdiction to hear her motion.

¶ 24    Lastly, we note that the circuit court entered the Judgment for Adoption order on October 28, 2019, in which it granted petitioners' petition to adopt and ordered Baby Girl M to be the child of petitioners. "To vest the appellate court with jurisdiction a party must file a notice of appeal within 30 days after entry of the judgment appealed from, or within 30 days after entry of an order disposing of a *timely* post-[judgment] motion." (Emphasis in original.) *Goral v. Kulys*, 2014 IL App (1st) 133236, ¶ 20 (quoting *Archer Daniels Midland Co. v. Barth*, 103 Ill. 2d 536, 538 (1984)). However, respondent did not file a postjudgment motion or a notice of appeal within 30 days of the circuit court's final and appealable order entered on October 28, 2019. Respondent also did not file a motion attacking the October 28, 2019, Judgment for Adoption order. See *In re India B.*, 202 Ill. 2d 522, 533 (2002) ("a petition for relief from a final order under the Adoption Act must be filed within one year after entry of the order; thereafter the adoption becomes unchallengeable, making it impossible to grant a party effective relief with respect to the termination order"). And, as previously discussed, respondent's notice of appeal in this matter states that she is appealing the August 20, 2020, order. See *Baldwin*, 2020 IL App (1st) 160496, ¶ 31 ("Our jurisdiction is limited to the judgment or orders specified in the respondent's notices of appeal and orders in the procedural progression leading to the judgment

or orders appealed from."). Thus, to the extent respondent is challenging the October 29, 2019, Judgment for Adoption, we do not have jurisdiction to consider her challenge.

¶ 25 Accordingly, the circuit court correctly determined that it did not have jurisdiction to review respondent's motion because it was untimely under section 50/11(a) of the Adoption Act.

¶ 26                                    III. CONCLUSION

¶ 27 The circuit court correctly concluded that it did not have jurisdiction to review respondent's motion to revoke her consent to the adoption. Accordingly, we affirm the circuit court's order that dismissed respondent's motion for lack of jurisdiction.

¶ 28 Affirmed.