2025 IL App (1st) 231077-U

FIRST DISTRICT,
SIXTH DIVISION
June 20, 2025

Nos. 1-23-1077 and 1-23-2376, cons.

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| JASMINE SEBAGGALA and ABOLITION COALITION, | ) ) ) | Appeal from the Circuit Court of Cook County, Illinois. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 2021 L 9047 |
| HELEN LEVINSON and NILES TOWNSHIP ACCOUNTABILITY COALITION, | ) ) ) | Honorable Daniel J. Kubasiak, |
| Defendants-Appellees. | ) ) | Judge Presiding. |

_____

JUSTICE GAMRATH delivered the judgment of the court.
Presiding Justice Tailor and Justice Hyman concurred in the judgment.
Justice Hyman also specially concurred.

**ORDER**

¶ 1     *Held*:   We affirm in part and reverse in part the circuit court's dismissal of plaintiffs' complaint with prejudice. We also find that plaintiffs' lawsuit was not meritless under the Citizens Participation Act and did not warrant dismissal under the Act. As such, we reverse the award of attorney fees and costs to defendants and remand for further proceedings consistent with this order.

¶ 2     Plaintiff Jasmine Sebaggala is a teacher at a public elementary school. In 2021, defendant

Helen Levinson sent a letter of complaint to Sebaggala's employer regarding Sebaggala's

political activities and social media posts. Sebaggala and Abolition Coalition sued Levinson and Niles Township Accountability Coalition (NTAC) for defamation, intentional infliction of emotional distress, and appropriation of the right of publicity.

¶ 3     The circuit court granted defendants' motion to dismiss, finding plaintiffs' suit was barred by the Citizen Participation Act (Act) (735 ILCS 110/1 *et seq.* (West 2020)), known as the anti-SLAPP (Strategic Lawsuits Against Public Participation) Act, and finding plaintiffs failed to state a cause of action. The court granted defendants $38,159.28 in attorney fees and costs as prevailing parties under the Act. Plaintiffs appeal the judgment (No. 1-23-1077) and award of attorney fees (No. 1-23-2376). We affirm in part, reverse in part, and remand for further proceedings consistent with this order.

¶ 4                                    I. BACKGROUND

¶ 5     According to the operative complaint, Sebaggala is a Black fourth-grade public-school teacher and a member of Abolition Coalition, a group of citizens who "support and advocate for diversity and anti-racism in Niles Township, Illinois schools." Levinson is the founder of NTAC, an organization whose primary goal is "to keep politics out of schools." Plaintiffs allege Levinson uses this platform to make "bigoted remarks" about members of minority groups.

¶ 6     In 2020 and 2021, Sebaggala and Levinson argued about politics and social issues on Facebook and other social media. According to the first amended complaint, which frames the issues in this appeal, Levinson's statements about Sebaggala during this period constituted "a protracted and unlawful campaign of harassment," which we summarize as follows:

- On November 4, 2020, Sebaggala attended a Black Lives Matter protest organized by Abolition Coalition. Levinson stated on NTAC's social media that Sebaggala was protesting "in support of inappropriate conduct by a [District 219] board member."

- On June 8, 2021, Sebaggala attended a "Protest & Anti-Racism Celebration" hosted by Abolition Coalition to oppose police officers in schools. Levinson posted a video of the event on social media, referring to Sebaggala and other attendees as "agitators," and opining it was unacceptable for a teacher to advocate removing officers from schools.

- On August 8, 2021, Levinson referred to Sebaggala as "anti-white, anti-semetic [*sic*], anti-conservative, [and] anti-moderate" in a Facebook post.

¶ 7          On August 31, 2021, Levinson sent a 14-page letter to Sebaggala's employer, alleging "Sebaggala's activity perpetuates an anti-white sentiment that is ethically and morally wrong." In the letter, Levinson:

- States that Sebaggala and other members of Abolition Coalition engaged in "intimidation tactics," "verbal abuse," and "bullying" against parents and school board members, including "anti-white rhetoric" and "calling parents and board members racists, white supremacists, white nationalists, bigots, and misogynists."

- Claims that on July 27, 2021, after the school board did not vote for Sebaggala to fill a board vacancy, "a riot nearly broke out" and some school board members "required security to escort them to their cars."

- Provides screenshots of Sebaggala's Facebook posts, which she characterizes as "anti-white hate speech," "racist," and "offensive," and argues Sebaggala's posts serve no purpose except to "creat[e] tension and reactions on both sides."

- Asks, "[H]ow are white children in [Sebaggala's] classroom being treated? *** [D]oes Ms. Sebaggala's in-person and online activity violate Title VI of the Civil Rights Act ***?"

- Concludes by stating, "Please take the time to address this complaint with Ms. Sebaggala. I would like this shared with the Board of Education members, administration, and teachers of District 65. *** Lastly, I would like confirmation that this complaint was reported to Human Resources and added to her employee file."

¶ 8    According to plaintiffs, Levinson knew these allegations were "entirely false," and she "wanted to damage Sebaggala's career for the sole reason that Sebaggala is a Black teacher who supports Black Lives Matter." In response to the letter, Sebaggala's employer assigned a principal to observe Sebaggala's classroom. Sebaggala claims she "suffered a loss of reputation in her community and among her coworkers."

¶ 9    On September 10, 2021, ten days after Levinson's letter, plaintiffs filed the instant suit seeking damages for tortious interference with prospective economic advantage, appropriation of right of publicity, and defamation. On defendants' motion, the circuit court dismissed the initial complaint without prejudice, finding that defendants' statements were protected under the Act but giving plaintiffs leave to replead to address the deficiencies in the complaint.

¶ 10    Plaintiffs then filed the first amended complaint seeking relief in three counts. In count I, defamation, plaintiffs allege Levinson falsely accused Sebaggala of falsifying racist events, threatening bodily injury to defendants and police officers, committing "child abuse," segregating students based on race, attempting to start a riot, and violating the Civil Rights Act. In count II, intentional infliction of emotional distress (IIED), plaintiffs assert defendants' conduct was "extreme, outrageous, and beyond the bounds of human decency" in that they accused Sebaggala of "inventing racist incidents" when they had actual knowledge of Sebaggala's personal experience of such incidents. In count III, appropriation of right of publicity, plaintiffs allege defendants used Sebaggala's likeness and name "for the purpose of

creating outrage among their followers, and thus causing their followers to donate to their cause." Plaintiffs assert "[t]his is a purely commercial, money-making purpose which violates the Illinois Right of Publicity Act [(Publicity Act) (765 ILCS 1075/1 *et seq.* (West 2020))] and is not protected by the First Amendment." Plaintiffs seek damages "in an amount to be proven at trial but not less than $50,000" plus punitive damages on each of the three counts. Sebaggala did not replead her tortious interference count, which was the only count that alleged harm to her career as a future principal.

¶ 11    Defendants filed a combined motion to dismiss the first amended complaint under section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2020)). The motion argues the complaint should be dismissed under the Act pursuant to section 2-619 because plaintiffs' claims are solely based on Levinson's acts in furtherance of her "right to petition, speak, associate, or otherwise participate in government to obtain favorable governmental action." (Internal quotation marks omitted.) See *Goral v. Kulys*, 2014 IL App (1st) 133236, ¶ 34. The motion also contends the defamation and IIED counts should be dismissed under section 2-615 for failure to state a cause of action, insofar as "nothing stated or expressed by the Defendants even remotely constitutes defamation" and plaintiffs fail to plead any extreme or outrageous conduct by defendants or facts showing Sebaggala suffered extreme emotional distress therefrom. Finally, the motion contends the appropriation of the right of publicity count should be dismissed under sections 2-615 and 2-619 because defendants "have never engaged in any fundraising."

¶ 12    On May 16, 2023, the circuit court granted defendants' motion to dismiss with prejudice, finding the first amended complaint was subject to dismissal under the Act as a SLAPP and "the individual causes of action against Defendants also fail" for failure to state a cause of action.

Specifically, the court held plaintiffs failed to state a claim for defamation or IIED, and defendants' unrebutted evidentiary submissions showed they never engaged in fundraising using Sebaggala's name and likeness to support plaintiffs' claim for appropriation of the right of publicity. Defendants then filed a motion seeking attorney fees and costs as prevailing parties under the Act. See 735 ILCS 110/25 (West 2022). On December 14, 2023, the court granted the motion and awarded defendants $38,159.28 in attorney fees and costs. Plaintiffs appeal.

¶ 13                                    II. ANALYSIS

¶ 14        On appeal, plaintiffs argue the circuit court erred in (1) dismissing their complaint under the Act and awarding fees to defendants as prevailing parties under the Act, (2) holding they failed to state a cause of action for defamation (count I), and (3) finding their claim for appropriation of the right of publicity (count III) was defeated by "affirmative matter" outside the complaint. Plaintiffs also argue the court abused its discretion by dismissing the cause with prejudice instead of giving them an opportunity to amend. Plaintiffs do not appeal the section 2-615 dismissal of count II for IIED.

¶ 15                             A. Citizen Participation Act

¶ 16        Plaintiffs first contend the circuit court erred in dismissing their claims under the Act pursuant to section 2-619 of the Code (735 ILCS 5/2-619(a)(9) (West 2020)). A section 2-619 motion to dismiss admits the legal sufficiency of the complaint but asserts "an affirmative defense or other matter that avoids or defeats the plaintiffs' claim." (Internal quotation marks omitted.) *Janda v. United States Cellular Corp.*, 2011 IL App (1st) 103552, ¶ 83. We review *de novo* the dismissal of a complaint pursuant to section 2-619. *Goral*, 2014 IL App (1st) 133236, ¶ 31. We also review *de novo* the question of whether the Act immunized defendants from suit. *Id.*

¶ 17    The Act protects individuals from SLAPPs, defined as meritless suits intended "to chill a defendant's speech or protest activity and discourage opposition by others through delay, expense, and distraction." *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 34. The Act provides that "[a]cts in furtherance of the constitutional rights to petition, speech, association, and participation in government are immune from liability, regardless of intent or purpose, except when not genuinely aimed at procuring favorable government action, result, or outcome." 735 ILCS 110/15 (West 2020).

¶ 18    In *Sandholm*, our supreme court limited the Act's application to lawsuits "*solely* based on, relating to, or in response to 'any act or acts of the moving party in furtherance of the moving party's rights of petition, speech, association, or to otherwise participate in government.' " (Emphasis in original.) *Sandholm*, 2012 IL 111443, ¶ 45 (quoting 735 ILCS 110/15 (West 2008)). The court explained:

> "[W]here a plaintiff files suit genuinely seeking relief for damages for the alleged defamation or intentionally tortious acts of defendants, the lawsuit is not solely based on defendants's rights of petition, speech, association, or participation in government. In that case, the suit would not be subject to dismissal under the Act." *Id.*

¶ 19    Under *Sandholm*, we apply a three-part test to determine whether a lawsuit is subject to dismissal under the Act. *Glorioso v. Sun-Times Media Holdings, LLC*, 2024 IL 130137, ¶ 55. Under this test, movants have the burden of showing (1) their acts were in furtherance of their rights to petition, speak, associate, or otherwise participate in government to obtain favorable government action and (2) plaintiffs' claims are solely based on, related to, or in response to the movants' exercise of these rights. *Id.* If the movants meet their burden under both prongs, the

burden shifts to plaintiffs to prove by clear and convincing evidence that the movants' acts were not genuinely aimed at procuring favorable governmental action. *Id.*

¶ 20    Initially, plaintiffs seek reversal of the dismissal of their first amended complaint because the circuit court based its ruling on an error of fact, namely, its mistaken belief that Sebaggala was a school board member. In support, plaintiffs cite the following sentence from the court's May 16, 2023, order: "The court further notes that disputes between school board members, like the disputes here, routinely fall subject to this [A]ct." We do not find this statement reflects any error of fact by the court. Nor is it a dispositive fact warranting reversal. In its order, the court correctly identifies Sebaggala as a schoolteacher, not a board member. The court's passing reference to this case being a "dispute[] between school board members," is not a mistake of fact, particularly given the multitude of allegations regarding disputes at school board meetings and Levinson's request that her letter be shared with board members.

¶ 21    Next, plaintiffs seek reversal of the court's dismissal under the Act and related award of attorney fees and costs on the grounds that their lawsuit genuinely seeks relief for damages for defamation and intentionally tortious acts of defendants and is not solely based on defendants' rights of petition, speech, association, or participation in government. For this we turn to the supreme court's decision in *Sandholm,* the pivotal case on SLAPP actions.

¶ 22    Proceeding to the first prong of the *Sandholm* test, we consider whether an objective person would find defendants' acts were reasonably calculated to elicit a favorable government action or outcome. *Glorioso*, 2024 IL 130137, ¶ 67. By its plain language, the Act only encompasses "participation in government" and does not extend to "speech regarding matters of public concern that do not amount to 'government' participation." *Id.* ¶ 60.

¶ 23        Plaintiffs contend that because Levinson's letter does not complain specifically about the school curriculum or a school board member, Levinson's activities do not encompass participation in government. We disagree. Plaintiffs cite nothing to support their theory that protected participation in government is limited to commentary about school curriculum or elected school board members.

¶ 24        Sebaggala, a public-school teacher, is a government employee, paid with taxpayer dollars, in a school district regulated by the local government. Despite not being elected to the school board, Sebaggala's employment, termination, and discipline as a public-school teacher are not strictly private matters, as she contends. Moreover, Levinson's letter makes clear she is urging governmental action be taken against Sebaggala regarding her treatment of students and the "type of classroom instruction *** being given." Although the letter does not complain outright about the school curriculum or lesson plans, Levinson's letter raises concerns about Sebaggala's teaching methods, impartiality, and type of classroom instruction being given in a public school. This clearly constitutes acts in furtherance of Levinson's right to petition, speak, associate, or otherwise participate in government. See *Sandholm*, 2012 IL 111443, ¶ 38 (defining "government" broadly as "a branch, department, agency, instrumentality, official, employee, agent, or other person acting under color of law of the United States, a state, a subdivision of a state, or another public authority including the electorate").

¶ 25        For instance, Levinson's letter poses questions specifically designed to elicit action from public-school officials by stating, "Isn't there a code of conduct in being a good role model to students as a teacher?" and "[H]ow are white children in her classroom being treated? What type of classroom instruction is being given?" Levinson concludes her letter by urging action on the part of public-school officials, including "address[ing] this complaint with" Sebaggala, reporting

the matter to human resources, and adding the complaint to Sebaggala's employee file. Based on these facts, an objective observer would easily conclude that Levinson's letter is intended to elicit favorable action from a public body. It is the very type of activity the Act is meant to protect and, therefore, satisfies the first prong of the *Sandholm* test. See *Ryan v. Fox Television Stations, Inc.*, 2012 IL App (1st) 120005, ¶ 19 (defendant's activities in calling attention to the conduct of judges and urging the Supreme Court and Chief Judge to act, were the kind of activities the Act protects, falling "well within the scope of" the first prong of the *Sandholm* test).

¶ 26    Under the second prong of the *Sandholm* test, we must decide if plaintiffs' claims are "solely based on" defendants' protected acts. As *Sandholm* clarified, a lawsuit is only a SLAPP if plaintiffs' "true goal" in filing suit was to chill defendants' participation in government rather than to seek relief for personal harm allegedly suffered due to defendants' actions. *Sandholm*, 2012 IL 111443, ¶ 57.

¶ 27    Based on *Sandholm*'s statement that the Act was intended "to subject only meritless, retaliatory SLAPP suits to dismissal" (*Sandholm*, 2012 IL 111443, ¶ 45), the First District has adopted the "meritless and retaliatory" standard, under which defendants must show plaintiffs' claims are meritless and filed in retaliation against the defendants' protected activities to deter them from further engaging in those activities. *Ryan*, 2012 IL App (1st) 120005, ¶ 21.

¶ 28    In analyzing whether plaintiffs' claims are meritless, we look to section 2-619 (735 ILCS 5/2-619 of the Code (West 2020)), which concedes the legal sufficiency of a claim. Section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)) is irrelevant to dismissal under the Act. *Ryan*, 2012 IL App (1st) 120005, ¶ 22; see *Goral*, 2014 IL App (1st) 133236, ¶ 51 (denial of defendant's section 2-615 motion to dismiss had "no bearing" on his section 2-619 motion to dismiss under the Act). As such, defendants cannot rely on alleged pleading defects to show the

first amended complaint is meritless. *Garrido v. Arena*, 2013 IL App (1st) 120466, ¶ 22. Rather, defendants must affirmatively disprove an essential element of plaintiffs' claims. *Id.* ¶ 23. For example, in the context of a defamation claim, a defendant may offer affirmative evidence showing that the statements were true or did not damage the plaintiff's reputation. *Id.* ¶ 28; see *Wright Development Group, LLC v. Walsh*, 238 Ill. 2d 620, 638 (2010) (complaint dismissed under the Act where defendant presented evidence that his allegedly defamatory statement was true). Simply arguing the complaint does not allege sufficient facts or is insufficient to support damages is not enough to grant dismissal under the Act.

¶ 29    Here, defendants argue plaintiffs' defamation claim is meritless because some of the allegedly defamatory statements were not made by Levinson, are being misconstrued, or taken out of context by plaintiffs. Other statements, according to defendants, do not constitute defamation as a matter of law or are not pleaded with sufficient specificity. This last argument implicates the sufficiency of the complaint, which defendants have conceded for purposes of their motion to dismiss under section 2-619. As for the statements themselves, Levinson admits making at least some of the statements and simply argues that plaintiffs have not sufficiently pleaded defamation as a matter of law. Such asserted pleading defects are relevant to whether plaintiffs have stated a claim for defamation under section 2-615, but they will not justify dismissal under the Act under section 2-619. See *Ryan*, 2012 IL App (1st) 120005, ¶ 22; *Garrido*, 2013 IL App (1st) 120466, ¶ 28. Because defendants have not presented undisputed evidence showing all the statements Levinson made are true or that plaintiffs suffered no damages, they have not met the "meritless and retaliatory" standard articulated in *Ryan* and its progeny. See *Ryan*, 2012 IL App (1st) 120005, ¶ 21.

¶ 30 We note that the "meritless and retaliatory" standard was recently rejected by the Fourth District in *Anderson v. Smith*, 2025 IL App (4th) 241076. The *Anderson* court pointed out that if a defendant could "disprove[] some essential element of the nonmovant's claim" (*Garrido*, 2013 IL App (1st) 120466, ¶ 19), the defendant could move for summary judgment on that claim. *Anderson*, 2025 IL App (4th) 241076, ¶ 41. The court concluded: "We will not presume that the legislature intended for the Act to create a variant of preexisting dispositive motions that requires more litigation with a lower chance of success, nor does *Sandholm* stand for such a proposition." *Id.* ¶ 42. Instead, the *Anderson* court urged a second-prong inquiry focused solely on the "true goal" of the litigation and whether the plaintiffs are " 'genuinely seeking relief.' " *Id.* ¶ 48 (quoting *Sandholm*, 2012 IL 111443, ¶ 45).

¶ 31 This district split does not impact our resolution of this appeal because defendants' motion fares no better under the Fourth District standard. Simply put, defendants have failed to meet their burden of showing that plaintiffs' "true goal" in filing suit was not to genuinely seek relief for personal harm.

¶ 32 We find the facts of *Sandholm* instructive. The plaintiff in *Sandholm* was a high school basketball coach and athletics director. *Sandholm*, 2012 IL 111443, ¶ 4. Defendants engaged in a campaign to have plaintiff removed from his positions due to disagreements with his coaching style. The campaign included sending various letters and emails to school board members and presenting a petition to the school board for plaintiff's removal. Plaintiff filed a defamation suit against defendants.

¶ 33 Under these facts, the *Sandholm* court held plaintiff's lawsuit was not subject to dismissal as a SLAPP:

"[P]laintiff's lawsuit was not solely based on, related to, or in response to the acts of defendants in furtherance of the rights of petition and speech. Plaintiff's suit does not resemble in any way a strategic lawsuit intended to chill participation in government or to stifle political expression. It is apparent that the true goal of plaintiff's claims is not to interfere with and burden defendants' free speech and petition rights, but to seek damages for the personal harm to his reputation from defendants' alleged defamatory and tortious acts." *Id.* ¶ 57.

¶ 34    As in *Sandholm*, plaintiffs' suit does not remotely resemble a strategic lawsuit intended to chill participation in government. At this stage plaintiffs have shown the "true goal" of the action is to seek damages for the alleged harm to Sebaggala's reputation caused by Levinson's letter to her employer and her posts on social media. Therefore, we find defendants have not met their burden of demonstrating plaintiffs' claims are "solely based on" their protected acts. Accordingly, we reverse the circuit court's order dismissing the complaint under the Act. We also reverse the order granting defendants $38,159.28 in fees and costs under section 25 of the Act (735 ILCS 110/25 (West 2022)) because they are not prevailing parties under the Act.

¶ 35                                     B. Defamation

¶ 36    Plaintiffs next assert the circuit court erred in finding they failed to state a cause of action for defamation. We review *de novo* a section 2-615 dismissal. *O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152, ¶ 17.

¶ 37    A section 2-615 motion to dismiss challenges the legal sufficiency of the complaint by alleging defects on its face. *Young v. Bryco Arms*, 213 Ill. 2d 433, 440 (2004). The critical inquiry is whether the allegations in the complaint are sufficient to state a cause of action upon which relief may be granted. *Wakulich v. Mraz*, 203 Ill. 2d 223, 228 (2003). All well-pleaded

facts in the complaint and all reasonable inferences that may be drawn from those facts are taken as true and construed in the light most favorable to the plaintiffs. *Young*, 213 Ill. 2d at 441. Exhibits attached to the complaint become part of the complaint. *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 24. If there is a conflict between the exhibits and the facts alleged in the complaint, the exhibits control. *Id.*

¶ 38    To state a case for defamation, a plaintiff must allege facts showing defendant (1) made a false statement about the plaintiff, (2) made an unprivileged publication of that statement to a third party, and (3) the publication caused damages. *Green v. Rogers*, 234 Ill. 2d 478, 491 (2009). Only statements of fact are actionable in a defamation action; opinions are not. *Coghlan*, 2013 IL App (1st) 120891, ¶ 40.

¶ 39    Initially, the parties disagree as to whether the complaint alleges defamation *per se* or *per quod*. A statement is defamatory *per quod* if it causes reputational injury but does not fall within any of the categories of defamation *per se*. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 103 (1996).  A statement is defamatory *per se* if it indicates that the plaintiff (1) has committed a crime, (2) is infected with a loathsome communicable disease, (3) is unable to perform or lacks integrity in performing her employment duties, (4) lacks ability or otherwise prejudices that person in her profession, or (5) has engaged in adultery or fornication. *Green*, 234 Ill. 2d at 491-92. Statements that fall into one of these categories are considered "so obviously and materially harmful to the plaintiff" that damages are presumed. *Bryson*, 174 Ill. 2d at 87. Because damages are presumed, "a defamation *per se* claim must be pled with a heightened level of precision and particularity." *Green*, 234 Ill. 2d at 495.

¶ 40    Additionally, under the innocent construction rule, a statement that falls into a category of words that are defamatory *per se* is not actionable if it is reasonably capable of an innocent

construction. *Coghlan*, 2013 IL App (1st) 120891, ¶ 41. We should consider the statement in context, giving its words their natural and obvious meeting, and if it "is reasonably capable of a nondefamatory interpretation, it should be interpreted as such." *Id.*

¶ 41    Plaintiffs assert on appeal that their claim is entirely for defamation *per quod*, thus relieving them of the need to meet the heightened pleading standard for claims of defamation *per se*. Defendants assert that plaintiffs' claim is entirely for defamation *per se*. Indeed, the complaint itself recites, "In Illinois, falsely accusing a person of an unlawful act is *per se* defamatory and damages are presumed." There is no mention whatsoever of defamation *per quod* in plaintiffs' complaint, and the main case plaintiffs cite, *Kumaran v. Brotman*, 247 Ill. App. 3d 216 (1993), involves defamation *per se*.

¶ 42    Either way, plaintiffs' defamation claim fails as pled. Under defamation *per quod*, plaintiffs have not sufficiently pleaded the element of damages, which is fatal to their claim. Under defamation *per se*, plaintiffs have not set forth facts with sufficient particularity to state a claim. However, based on the record, we cannot say that no set of facts can ever be proved that would entitle plaintiffs to recovery for defamation *per se* if properly pled. Accordingly, we reverse the dismissal of plaintiffs' entire complaint with prejudice, and remand for further proceedings to give plaintiffs a chance to state a cause of action for defamation *per se*.

¶ 43                    1. Defamation *Per Quod*

¶ 44    To recover for defamation *per quod*, a plaintiff must plead and prove "actual damages of a pecuniary nature." *Hill v. Schmidt*, 2012 IL App (5th) 110324, ¶ 25. "[G]eneral allegations such as damage to one's health or reputation, economic loss, and emotional distress are insufficient to state a cause of action for defamation *per quod*." (Internal quotation marks omitted.) *Id.*

¶ 45 Plaintiffs seek more than $50,000 and punitive damages in their complaint, but they do not tie this to a precise injury and do not specifically allege any actual pecuniary damages. At most, they state that the school assigned a principal to observe Sebaggala's classroom. They allege that Sebaggala's union representative said the letter was "causing harm to her career," but do not elaborate on the nature of said harm. Nor do they point to any actual harm. In fact, the letter from the union representative says that Levinson's letter "can impact" Sebaggala's profession and "can cause harm" to her livelihood. It does not say it caused or was causing harm, as pled.

¶ 46 Plaintiffs additionally allege, without explanation, that Sebaggala suffered "a loss of reputation in her community and among her coworkers." But they do not allege Sebaggala suffered pecuniary or special damages and actual harm. When probed at oral argument, plaintiffs' counsel claimed Sebaggala's career was damaged because she was no longer considered a "future principal." However, this conclusory allegation, which appeared in the original complaint, was conspicuously dropped from the first amended complaint, leaving nothing more than insufficient general allegations of harm that do not support a claim for defamation *per quod*. See *id.* ¶ 26; *Sarmount v. DeWitt*, 2024 IL App (2d) 230239, ¶¶ 28-30. As such, the court properly dismissed with prejudice plaintiffs' claim for defamation *per quod* in count I.

¶ 47 2. Defamation *Per Se*

¶ 48 As for plaintiffs' claim for defamation *per se,* "a defamation *per se* claim must be pled with a heightened level of precision and particularity." *Green*, 234 Ill. 2d at 495. Count I in its current form does not meet this standard and was properly dismissed, as follows.

¶ 49        Some of the statements alleged in count I are affirmatively rebutted by exhibits attached to the complaint. For instance, plaintiffs allege Levinson defamed them by saying Sebaggala "attempted to start a 'riot' in multiple school board meetings." However, Levinson's letter says only that "a riot nearly broke out" when the board did not vote to seat Sebaggala. It does not accuse Sebaggala of inciting it.

¶ 50        A few statements alleged to be defamation are not defamation at all because they are either true, as proven by the video of Sebaggala's public comments and posts of Sebaggala herself, or they can be given an innocent construction. See *Missner v. Clifford*, 393 Ill. App. 3d 751, 766 (2009) (under the innocent construction rule, if a statement may reasonably be interpreted as referring to someone other than the plaintiff, it is not actionable *per se*).

¶ 51        Other statements alleged in the complaint may be deemed mere opinions, not facts capable of being proven true or false (*e.g.*, racist, Marxists, Communists). When stated in general terms, as is the case here, they are nonactionable. See *Coghlan*, 2013 IL App (1st) 120891, ¶ 50 (and cases cited therein) (a harsh characterization that merely amounts to loose, figurative language that no reasonable person would believe presented facts, is not defamation, *e.g.*, calling someone the "biggest crook on the planet," "trashy," a "traitor," "a rip-off, a fraud, a scandal, a snake-oil job," and using the term "blackmail" were all nonactionable); *Ward v. Forest Preserve District of Winnebago County*, 13 Ill. App. 2d 257 (1957) (saying "You are a Communist" is not slander *per se* and is non-actionable without special damages); *Flickinger v. King*, 385 So.3d 504, 514-15 (2023) (use of the term "racist" is not actionable as defamation); *Law Offices of David Freydin v. Chamara,* 24 F.4th 1122, 1131 (7th Cir. 2022) (under Illinois defamation law, comments such as "hypocrite," "chauvinist," and "racist" are not actionable when stated in general terms, without asserting specific factual support); *Younge v. Berman,* 2025 IL App (2d)

240354, ¶ 48 ("it is not defamation to inquire [with an employer] whether [an employee] has broken the law" and asking if this is "how [they] want [their] company represented").

¶ 52    This is not to say such words may never amount to defamation. But to be actionable they must be accompanied by specific factual support and pleaded with a heightened level of specificity. In *Green*, 234 Ill. 2d at 498, our supreme court held that plaintiff's "vague and generic" allegation that defendant accused plaintiff of "abus[ing] players, coaches, and umpires" was insufficient to state a cause of action for defamation *per se*. The court observed that "abuse" can mean to "reproach coarsely" or to "violate sexually." *Id.* at 496-97. By not pleading either the actual words or the type of "abuse" to which defendant referred, plaintiff made it "virtually impossible" for defendant to formulate an intelligent defense. *Id.* at 497.

¶ 53    The same is true here. Plaintiffs allege in general terms that Levinson called Sebaggala a "child abuser," said she "abuses white children in her class," "threaten[ed] bodily harm to defendants," and "threaten[ed] harm against police officers." Plaintiffs do not plead the type of abuse to which Levinson referred, and these statements do not appear in Levinson's letter or in the social media posts attached to the complaint. Plaintiffs give no details as to what Levinson actually said, when she said it, or to whom she said it. As such, plaintiffs have not met the heightened pleading standard applicable to defamation *per se*.

¶ 54    Nonetheless, if specific facts can be pled, some of Levinson's alleged statements may give rise to defamation *per se.* They strike at the heart of Sebaggala's profession and could suggest she lacks the ability or integrity to perform her job as a teacher. Such was the case in *Kumaran* where we held the plaintiff could state a cause for defamation *per se* based on defendants' remarks in an article (*e.g.,* eight-ball, paranoid, and scam), which imputed a lack of integrity and impeached his reputation as a teacher. Although plaintiffs' complaint falls short of

what was pled in *Kumaran*, they should be allowed one last opportunity to amend count I of their complaint to plead specific facts, if they can, to state a cause of action for defamation *per se.*

¶ 55    We recognize that a party's right to file an amended complaint is not absolute and unlimited. The decision whether to allow it lies within the sound discretion of the circuit court and will not be disturbed absent an abuse of discretion. *Freedberg v. Ohio Nat'l Insurance Co.*, 2012 IL App (1st) 110938, ¶ 41. In determining whether the court properly exercised its discretion, we consider, among other things, whether allowance of the amendment furthers the ends of justice. *Id.* ¶ 43. Dismissal with prejudice and without leave to amend is appropriate when repleading would be futile and no set of facts can be proven that would entitle plaintiffs to recover. *Smith v. Central Illinois Regional Airport*, 207 Ill. 2d 578, 584-85 (2003). Based on the record and given the severity of accusations directed at Sebaggala's profession, we are not prepared to say quite yet that repleading a claim for defamation *per se* would be futile. Indeed, if plaintiffs can prove Levinson made false statements of fact (not opinion) that are not protected by innocent construction and fall within one of the five categories of defamation *per se*, damages are presumed, and recovery is certain. However, if, on remand, they fail to allege sufficient facts under the heightened pleading standard, they ought not be permitted to proceed with the defamation *per se* claim and this case should end.

¶ 56                    C. Appropriation of the Right of Publicity

¶ 57    Plaintiffs next argue the circuit court erred in dismissing with prejudice their claim for appropriation of the right of publicity (count III).

¶ 58    The Publicity Act provides that "[a] person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person." 765 ILCS 1075/30(a) (West 2020). A defendant who

violates the Publicity Act is liable for actual damages and/or "profits derived from the unauthorized use." 765 ILCS 1075/40(a) (West 2020).

¶ 59      Plaintiffs allege in their complaint that "[o]n NTAC's website, Levinson solicits donations and fundraising through multiple links" and that plaintiffs used Sebaggala's name and likeness to generate outrage and raise donations. In their combined motion to dismiss, defendants provided the court with NTAC's website address as well as publicly available archives showing screenshots of the website dating back to November 1, 2020. None of the screenshots showed any donation links.

¶ 60      Plaintiffs argue that the circuit court erred in considering defendants' extrinsic evidentiary material on a section 2-619.1 motion to dismiss. A section 2-615 or 2-619 motion concedes the truth of all well-pleaded allegations, and "a party may not submit evidentiary material in support of a section 2-619 motion for the purpose of contradicting well-pleaded facts in the complaint." *Green v. Trinity Int'l University*, 344 Ill. App. 3d 1079, 1086 (2003) (in ruling on combined motion to dismiss, court erred in considering evidentiary material going to the truth of the allegations in the complaint); see also *Asset Acceptance, LLC v. Tyler*, 2012 IL App (1st) 093559, ¶ 23 ("An affirmative matter [under section 2-619] encompasses any defense other than a negation of the essential allegations of the cause of action."). However, there is a difference between well-pleaded facts and conclusions. For purposes of a motion to dismiss, unsupported conclusory allegations are not accepted as true. See *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31.

¶ 61      Plaintiffs' first amended complaint alleges in vague sweeping terms that Levinson "solicited donations" based on the letter she sent to Sebaggala's employer, and more generally that she "creates false statements about Plaintiffs to generate outrage and, therefore, more

donations." However, none of the social media and website screenshots in the first amended complaint contain any solicitations for funds or fundraising links. Moreover, although plaintiffs allege defendants solicited donations through "multiple links" on NTAC's website, they provide no description of these alleged links, they do not recite the language used to solicit funds, and they do not explain what happens when a link on the website is clicked.

¶ 62        Plaintiffs made no attempt to add specific facts to their first amended complaint even after the court dismissed their initial complaint. Nor did they reply to defendants' affirmative unrebutted proofs. As the circuit court held, plaintiffs' unsupported conclusory allegations are insufficient to survive a motion to dismiss in the face of defendants' unrefuted evidence. As such, we find no error in the court's dismissal with prejudice of plaintiffs' claim for appropriation of the right of publicity. See *Dawson v. City of Geneseo*, 2018 IL App (3d) 170625, ¶ 11, 17 (we may affirm a court's grant of a motion to dismiss on any basis supported by the record).

¶ 63                                III. CONCLUSION

¶ 64        We hold that plaintiffs' lawsuit was not meritless under the Citizens Participation Act. Accordingly, we reverse the court's dismissal of plaintiffs' complaint under the Act and the award of attorney fees and costs to defendants because they are not prevailing parties under the Act. We affirm the dismissal with prejudice of plaintiffs' claims for defamation *per quod* and appropriation of the right of publicity, but we reverse the court's dismissal with prejudice of plaintiffs' ostensible claim for defamation *per se*. We remand this case for further proceedings to give plaintiffs an opportunity to file a second amended complaint for the sole purpose of amending count I to attempt to plead facts supporting a cause of action for defamation *per se*.

¶ 65        For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part and reversed in part and the matter is remanded for further proceedings consistent with this order.

¶ 66        Affirmed in part and reversed and remanded in part.

¶ 67        JUSTICE HYMAN specially concurring:

¶ 68        In this era of social media, protecting individuals from false and harmful public accusations ensures justice in individual cases and maintains civility and truthfulness in public discourse. I write separately to pose a question regarding social media and claims of defamation.

¶ 69        People now communicate in ways that were unimaginable before the advent of social media; however, social media has also amplified the harm that false and defamatory statements can cause. Reputations painstakingly built over the years can now be destroyed in seconds by a single post that spreads with viral speed. While much of the legal conversation has centered on the responsibility of media outlets and the liability of online platforms, little attention has been paid to whether defamation law itself needs rethinking.

¶ 70        Any effort to curb the abuses of social media must be approached with caution, ever mindful of the fundamental protections guaranteed by the First Amendment. The challenge is not whether to act, but how. Thus, my question: How can we uphold free expression while protecting individuals from reputational harm in a digital age where the consequences are more severe and the reach broader than ever before?

¶ 71        This challenge will become increasingly urgent in the years to come, and the law must be prepared to respond with both fidelity to constitutional values and sensitivity to the character and livelihood of individuals.